IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER TROUT, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
|   VS. | : | |
| | : | |
| MICHAEL J. ASTRUE[1], | : | |
| Commissioner of Social Security, | : | |
|     Defendant | : | NO. 10-6530 |

## REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied the application of Heather Trout for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").  Presently before this court are the plaintiff's request for review and the defendant's response to request for review.  For the reasons set forth below, this court recommends that plaintiff's request for review be GRANTED in part and DENIED in part.

I.               FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a thirty-four (34) year-old women born on June 22, 1977.  (Tr. 29).

Plaintiff has a high school education and cosmetology training.  (Tr. 35).

---

[1]Michael J. Astrue became Commissioner of Social Security on February 14, 2007.  Pursuant to Fed. R. Civ. Pr. 25(d)(1), he is automatically substituted for Jo Anne B. Barnhart as defendant in this matter.

1

On December 26, 2007, plaintiff filed an application for DIB and SSI.  (Tr. 119, 127).  Plaintiff claims disability since February 24, 2007.  (Tr. 80).  This application was denied at the state level on July 22, 2008.  (Tr. 82, 87).  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 95-96).

A hearing before an ALJ took place on November 23, 2009.  (Tr. 31-78). Plaintiff, represented by counsel, testified along with a vocational expert (VE).  (Tr. 31-78).  In a decision dated December 8, 2009, the ALJ denied plaintiff's application for DIB and SSI benefits.  (Tr. 17-30).  The ALJ found that plaintiff's severe impairments were history of traumatic fracture of right humerus, laceration of right upper extremity extensor tendons, degenerative disc disease of the lumbar spine and mood disorder.  (Tr. 22).  The ALJ further determined that plaintiff has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except plaintiff is restricted from work involving detailed instructions, hazardous machinery, temperature extremes, heights and climbing and requires work that allows for a sit/stand option.  (Tr. 26).  The ALJ found that plaintiff is unable to perform any past relevant work.  (Tr. 28).  However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 29).

Plaintiff requested review before the Appeals Council.  The Appeals Council upheld the ALJ's decision on September 21, 2010, permitting the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1-5).

II.        LEGAL STANDARDS

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); <u>Pierce v.</u>

Underwood, 587 U.S. 552 (1988).  "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65.  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, 402 U.S. 401 (1971); Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).  "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health and Human Services, 841 F.2d 57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982).   The claimant satisfies his burden by showing an inability to return to his past relevant work.  Doak v. Heckler, 790 F.2d at 28; Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979) (citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966)).  Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy.  20 C.F.R. § 404.1520.  See Rossi v. Califano, 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

(I)  At the first step, we consider your work activity if any.  If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.  (iv).  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v).  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.        ADMINISTRATIVE LAW JUDGE'S DECISION

Using the above mentioned sequential evaluation process, the ALJ determined plaintiff has not been under a "disability," as defined in the Social Security Act, since February 24, 2007, the date of plaintiff's alleged onset date, through the date of the ALJ's decision.  (Tr. 30).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful work activity since plaintiff's application date.  (Tr. 22).  At step two, the ALJ found that plaintiff's history of traumatic fracture of right humerus, laceration of right upper extremity extensor tendons, degenerative disc disease of the lumbar spine and mood disorder were "severe" impairments within the meaning of the Regulation.  (Tr. 22).  In making this determination the ALJ relied upon plaintiff's following summarized medical records:

4

Plaintiff was admitted to St. Luke's Medical Center in Bethlehem on February 24th, 2007 following an automobile accident, with severe injuries to her right hand, right arm left hand and spine. (Tr. 222-308; Tr. 407-452).  During this time plaintiff underwent two surgeries to her right arm to repair a fractured humerus, trauma to the radial nerve, a laceration over the dorsum of the wrist and a cut to the extensor tendon; the first on February 24, 2007, the second February 26, 2007. (Tr. 321-323).  A  half cast was placed in the posterior right upper extremity with the elbow at ninety degrees, the cast was removed March 9, 2007. (Tr. 212).   Plaintiff also suffered an L5 transverse process fracture of the vertebrae, a fracture of the spine and injuries to the left hand. (Tr. 369; Tr. 648-680). Dr. Steven Puccio, D.O.  was plaintiff's treating surgeon for the time of plaintiff's stay. (Tr. 222). Plaintiff was discharged on March 2, 2007. (Tr. 308).

After plaintiff was discharged, plaintiff received in home care from visiting nurses for assistance with surgical wounds, anxiety, and managing medication. (Tr. 617).  Subsequent to her hospital release, plaintiff attended outpatient physical therapy for plaintiff's right wrist and hand, and right arm. (Tr. 198- 221).  Plaintiff was seen three times per week for four to six weeks. (Tr. 198-212).  Plaintiff was seen by Dr. Manny Iyer, M.D. in May, 2007.  Dr. Iyer reported plaintiff was doing very well with a good range of motion in her wrist and hand with decent grip strength, but was experiencing numbness over the dorsum of the thumb. (Tr. 215, 217). As of May 14, 2007, Dr. Puccio noted excellent range of motion in plaintiff's elbow, with good strength but moderate weakness in plaintiff's upper right arm, stating it was well healed. (Tr. 469).  On June 28, 2007 a bone stimulator was applied to plaintiff's upper right arm for a delayed union of plaintiff's right distal humerus, and Dr. Puccio noted at that time she had no other complaints and was doing well. (Tr. 468).

Plaintiff underwent surgical coccygectomy[2] at St. Luke's hospital on September 25, 2007, performed by Dr. Puccio, due to a fracture that had caused continuous pain. (Tr. 653-656). Dr. Puccio's treatment notes indicate that on November 12, 2007 plaintiff had a follow up and had no complaints connected to the surgical coccygectomy, however complained of persistent lower back, leg and neck pain which had become progressively worse since the accident. (Tr. 464). A CT of plaintiff's cervical spine revealed evidence of a degenerative change and disc herniation at C5-6, calcification of the ligament, and degenerative changes at the lumbar L5-S1. (Tr. 464). An MRI on November 14, 2007 showed a large calcified C5-6 disc protrusion, cord deformity and the probability of compression of the right C6 nerve root. (Tr. 587). On December 7, 2007, plaintiff underwent cervical discectomy and fusion at C5-C6 to treat the nerve root compression.[3] (Tr. 659). A follow up on February 20, 2008 cites plaintiff's complaints of minimal numbness of the left thumb, and continuous headaches. (Tr. 578). An MRI performed on March 26, 2008, revealed degenerative disc disease at L4-5 and L5-S1. (Tr. 579). Plaintiff complained of continuous back pain, and was placed on steroids by Dr. Puccio in an effort to reduce inflamation and pain. (Tr. 577-580).

From the period of February 2, 2008 to October 10, 2008 plaintiff was being treated for chronic and severe headaches by her primary physician Dr. Gregory Todd who prescribed Percocet and Rebax for headaches and arm pain. (725-732).

On June 11, 2008, Dr. Sam Weng, M.D., with the bureau of disability determination, performed a constructive evaluation of plaintiff. (Tr. 553-568). Plaintiff

---

[2]Surgical Coccygectomy - Removal of the tailbone. Dorland's Illustrated Medical Dictionary. Twenty-ninth addition, 2000, p. 370.
[3]Cervical Discectomy- surgery on the vertebra of the neck. Dorland's Illustrated Medical Dictionary, Twenty-ninth addition, 2000, p. 325.

complained of pain in her neck, back and spine, as well as headaches and difficulty sleeping. (Tr. 553-568).   Plaintiff also informed Dr. Weng that she had run out of money and was no longer taking pain medication regularly. (Tr. 553-568).   Plaintiff told Dr. Weng that she could not sit or stand for long periods due to the pain in her back and neck. (Tr. 554).   Dr. Weng noted plaintiff could walk short distances, and get on and off of the examination table on her own but slowly and gingerly.  (Tr. 558).   Plaintiff also showed a decreased range of motion in her neck due to the initial injury and the cervical surgery.  (Tr. 558).   Plaintiff had difficulty reaching, pushing, balancing, and with right hand strength. (Tr. 553-568).   Dr. Weng noted that plaintiff was unable to lift/carry more than five (5) pounds and unable to stand for more than one hour and was limited to sitting only about one-half hour because of low back pain.  (Tr. 562).   Dr. Weng also noted that plaintiff has problems with handling, fingering and feeling with the right hand but no difficulty reaching.  (Tr. 563).

On October 7, 2008, Dr. Puccio discovered a new disc herniation at C4-5, and non-fusion from the prior surgery including central canal narrowing at C5-6. (Tr. 714).  Plaintiff underwent another cervical discectomy and fusion on C4-5 and C5-6 on October 28, 2008. (684-691).  At the follow up Dr. Puccio reported that plaintiff was doing well with some discomfort in her right shoulder. (Tr. 581).  During that follow up Dr. Puccio placed a bone stimulator in plaintiff with no significant difficulty or problems. (Tr. 581).  An x-ray taken on January 19, 2009, showed plaintiff's hardware was stable and alignment unchanged.  (Tr. 601).  On January 19, 2009, Dr. Puccio noted that plaintiff ambulated with a non-antalgic gait and had good ambulatory function. (Tr. 582).

On September 19, 2009 Plaintiff was admitted to the Emergency Department at

St. Luke's Hospital and diagnosed with migraine headaches and back pain. (Tr. 700-703). She was given an injection of analgesic for the pain as migraine treatment and was advised to follow up with her primary care physician. (Tr. 703-704). Dr. Gregory Todd, plaintiff's primary care physician, reported on November 9, 2009 that plaintiff had chronic neck and back pain and ongoing migraines. (Tr. 732). Dr. Puccio has recommended surgery to repair a severely desicated lumbar disc, however due to plaintiff's lack of medical insurances this procedure has not yet been performed. (Tr. 588-594).

Plaintiff was diagnosed with depression, anxiety and post traumatic stress syndrome during her recovery period. (Tr. 721-724; Tr. 717-718; and Tr. 651-652). On March 26, 2007, Dr. Todd, changed plaintiff from Ativan to Klonopin for anxiety and told plaintiff to follow up in three months. (Tr. 200). Plaintiff had no formal psychiatric treatment until June 1, 2009, when she was seen at Life Guidance, LLC. (Tr. 716- 724). On June 19, 2009, a psychiatric evaluation gave plaintiff a diagnosis of major depressive disorder with a GAF[4] of 55[5]. (Tr. 724).

On September 24, 2009, Dr. Sung Park, M.D. completed a psycho-social summary that indicated that plaintiff complained of depression and anxiety. (Tr. 716). Plaintiff reported that plaintiff's hobbies included taking care of her four children and volunteering at their school. (Tr. 716). It was noted that plaintiff was neatly dressed and well-groomed.

---

[4]The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and doctors to "measure the psychological, social, and occupational functioning levels of an individual." Torres v. Barnhart, 139 F. App'x 411, 415 n.2 (3d Cir. 2005)(citations omitted).

[5]A Global Assessment of Functioning (GAF) of 41-50 indicates serious symptoms, including the inability to keep a job. A GAF of 51-60 indicates only moderate difficulties. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)(DSM-IV).

Plaintiff's attention and concentration were both normal and plaintiff was oriented to person, place and time.  (Tr. 717).  Plaintiff denied auditory or visual hallucinations as well as suicidal or homicidal ideation.  (Tr. 717).  Plaintiff was given a diagnosis of post-traumatic stress disorder and a GAF score of 65[6].  (Tr. 717).

On October 1, 2009, Dr. Park completed a medical source statement.  (Tr. 651-652).  Dr. Park found that plaintiff had poor abilities in performing activities with a schedule and maintaining regular attendance, in completing a normal workday or workweek and performing at a consistent pace and traveling in unfamiliar places or using public transportation.  (Tr. 651). Dr. Park also reported plaintiff with no more than a fair ability in the following areas: carrying out short, simple instructions; understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working with or near others without being distracted by them; making simple work related decisions; interacting appropriately with the public; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting.  (Tr. 652).

Dr. Todd completed a medical source statement on November 9, 2009, finding that plaintiff was limited to lifting/carrying ten (10) pounds, able to stand/sit at least two hours in an eight hour work day but only able to stand/sit for 10 minutes at a time.  (Tr. 733-734).  A medical source statement of ability to do work related activities reported plaintiff could only sit or stand for ten minutes at a time and had severe headaches which limit plaintiff's ability to work

---

[6]A Global Assessment of Functioning (GAF) of 61-70 indicates some "mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)(DSM-IV).

for long periods. (Tr. 734).

Continuing with the five step analysis, the ALJ moved onto step three.  At step three, the ALJ found plaintiff does not have an impairment, or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 23).

At step four, the ALJ found that plaintiff has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except plaintiff is restricted from work involving detailed instructions, hazardous machinery, temperature extremes, heights and climbing and requires a work that allows for a sit/stand option.  (Tr. 26).  The ALJ considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 26).  Further, the ALJ considered opinion evidence. (Tr. 26).  The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible.  (Tr. 27).  The ALJ found that:

> While the claimant has established some significant limitations since her alleged onset date, there is no showing of wholly work preclusive limitations that meet the statutory duration requirements.  The evidence of record shows that claimant has improved with the prescribed treatment modalities which have included multiple surgical procedures.  Nonetheless, even in allowing for appropriate periods of recuperation, claimant has been able to maintain her role as the primary caretaker of her four school aged children.  Claimant's demonstrated activities are simply not consistent with a finding of disability.
> (Tr. 27).

10

The ALJ also explained that significant weight was given to the state agency medical examiner who determined, in July 2008, that plaintiff had the residual functional capacity to perform light exertion level work.  (Tr. 27).  The ALJ found that the state agency examiner's opinion was supported by the evidence.  (Tr. 27).

The ALJ found that no significant weight was given to Dr. Weng's opinion because it was based on a one-time examination with obvious emphasis placed on claimant's subjective complaints and was not supported by the evidence of record.  (Tr. 28).  The ALJ also found that minimal weight was given to Dr. Todd's assessment because it was not supported by Dr. Todd's own treatment notes or the other evidence of record.  (Tr. 28).  Finally, the ALJ found that no significant weight was given to Dr. Park's assessment as it was not supported by the treatment notes from Life Guidance.

Finally, at step five the ALJ found that plaintiff is unable to perform any past relevant work.  (Tr. 28).  However, the ALJ found that based on plaintiff's age, education, and residual functional capacity, there are jobs in the national economy that plaintiff can perform.  (Tr. 29).  Thus, the ALJ determined that plaintiff has not been under a "disability," as defined in the Social Security Act, from February 24, 2007 through the date of the ALJ's decision.  (Tr. 30).

IV.        PLAINTIFF'S CONTENTIONS

Plaintiff alleges six errors to the ALJ's decision: (1) the ALJ failed to find some of plaintiff's impairments as severe; (2) the ALJ's residual functional capacity finding was not supported by substantial evidence; (3) the ALJ erred in not giving controlling or significant weight to the opinions of Dr. Gregory Todd, Dr. Sung Park, and Dr. Sam Weng; (4)  the ALJ erred in finding that plaintiff's testimony concerning the intensity, persistence and limiting

effects of plaintiff's symptoms was not credible; (5) the hypothetical question posed to the VE was deficient because it did not convey all of plaintiff's impairments; and (6) the ALJ's decision should be reversed.

V.          DISCUSSION

The Commissioner's findings must be affirmed if they are supported by substantial evidence.  42 U.S.C. § 405 (g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision.  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993).

In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Richardson v. Perales, supra.

In the case at bar, the ALJ determined the medical evidence established that plaintiff's severe impairments were history of traumatic fracture of right humerus, laceration of right upper extremity extensor tendons, degenerative disc disease of the lumbar spine, and mood disorder.  (Tr. 22).  The ALJ further determined that plaintiff has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except plaintiff is restricted from work involving detailed instructions, hazardous machinery, temperature extremes, heights and climbing and requires work that allows for a sit/stand option.  (Tr. 26).  The ALJ found that plaintiff is unable to perform any past relevant work.  (Tr. 28).  However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 29).  After review of the record, this court finds the ALJ's decision was in part

not supported by substantial evidence.  As such, plaintiff's request for review should be granted in part and the case should be remanded to the ALJ for further proceedings.

A.          Claim: The ALJ Failed to Find Some of Plaintiff's Impairments as Severe

Plaintiff claims that the ALJ's finding of plaintiff's severe impairments was not supported by substantial evidence because the ALJ failed to find plaintiff headaches, cervical neck injuries, post traumatic stress disorder, anxiety, and left arm, right hand/arm injuries as severe impairments.  We agree that the ALJ's decision not to find plaintiff's migraines a severe impairment was not supported by substantial evidence.  We disagree with the remainder of the impairments.

Step two of the above laid out five step process is known as the "severity regulation" because it focuses on whether the claimant is suffering from a severe impairment.  20 C.F.R. § 404.1520(c).  An impairment is severe if it is "of magnitude sufficient to limit significantly the individual's ability to do basic work activities."  Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir.1982); see also 20 C.F.R. § 404.1520(c).  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  A non-severe impairment is a "slight" abnormality which has a minimal effect on the individual such that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  Bowen v. Yuckert, 482 U.S. 137, 149-51, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).  In assessing the severity of an alleged impairment, the ALJ must consider "all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(a).  The Third Circuit has stated, "[t]he step-two inquiry is a de minis

screening device to dispose of groundless claims." <u>Newell v. Commissioner of Social Security</u>, 347 F.3d 541, 546-47 (3d Cir.2003).

       1.    *Headaches*

Plaintiff claims that the ALJ erred in not finding plaintiff's headaches a severe impairment. Plaintiff cites to several medical records to support the claim that her headaches are a severe impairment. Plaintiff explains that she had an MRI of her brain done on October 13, 2008 because of her headaches. (Tr. 712). Plaintiff notes that headaches are mentioned in Dr. Puccio's records, Dr. Weng's medical source form, Dr Todd's records, and Dr. Parks' medical source form. (Tr. 578, 553-567, 729-732, 652, respectively). Plaintiff also notes that she was seen in the emergency room at St. Luke's Hospital for migraines on September 19, 2009. (Tr. 701). Plaintiff argues that based on these numerous notations of headaches the ALJ should have found plaintiff's headaches to be a severe impairment.

The ALJ did mention some of the medical records pertaining to plaintiff's migraines. The ALJ noted that Dr. Weng's medical source form indicated that plaintiff suffered from headaches. (Tr. 23). The ALJ noted that while plaintiff did have an MRI of the brain secondary to complaints of headaches, the MRI results were unremarkable. (Tr. 24). Furthermore, the ALJ noted that plaintiff was seen in the emergency room for back pain and noted that plaintiff had a migraine headache.

The ALJ noted that plaintiff was seen in the emergency room for a migraine but that was secondary to plaintiff's back pain. Although plaintiff's chief complaint was noted as back pain in the emergency room record, plaintiff's primary diagnosis in the same records was migraine. (Tr. 702). Plaintiff's chief complaint to her treating physician was headaches on

14

numerous occasions.  (Tr. 729-732.)  Dr. Todd prescribed Percocet and Rebax for plaintiff's

headaches. (725-732).  Furthermore, plaintiff testified that she suffers from headaches four to

five times a week, and as discussed below that ALJ did not substantial support his decision to not

find plaintiff's testimony credible.

The ALJ cited some of the medical record notations that plaintiff argues to

support this claim but dismissed them without explanation.  This court finds that the ALJ did not

adequately consider plaintiff's medical records as they pertain to plaintiff's headaches.  The

ALJ's decision as to plaintiff's headaches was not supported by substantial evidence and

plaintiff's request for review is granted as to this claim.

2.      *Cervical Neck Injuries*

Plaintiff claims that the ALJ erred in not finding that plaintiff's cervical neck

injury was a severe impairment.  Plaintiff argues that she underwent two surgeries on her cervical

spine on December 7, 2007 and October 28, 2008.  (Tr. 661, 684).  Plaintiff explains that Dr.

Puccio noted that plaintiff had neck discomfort, paracervical spasm and recommended physical

therapy, anti-inflammatory medications, moist heat, hot showers and massage.  (Tr. 582).

Plaintiff notes that she had to stop treatment because plaintiff's insurance lapsed.  Finally,

plaintiff argues that her own testimony was that her shoulder pain impacts household duties, and

simple chores such as driving, carrying groceries and emptying the dishwasher.  (Tr. 140-153).

The ALJ did discuss the medical records that pertain to plaintiff's cervical neck

problems.  The ALJ explained that a CT scan of plaintiff's cervical spine revealed evidence of

degenerative changes and disc herniation at C5-6 and that plaintiff underwent a cervical

discectomy and fusion in early December 2007.  (Tr. 23) The ALJ explained that a post-operative

15

x-ray showed appropriate alignment status and that Dr. Puccio's notes from January and February 2008 indicate that plaintiff was doing well.  (Tr. 23).  The ALJ also noted that plaintiff was again seen on October 28, 2008 for persistent herniation and persistent disc material at C5-6 as well as a new herniation at C4-5 and that plaintiff underwent revision of anterior cervical discectomy and fusion.  (Tr. 24).  An x-ray performed on January 19, 2009 showed plaintiff's hardware was stable and alignment unchanged and Dr. Puccio reported that plaintiff ambulated with a non-antalgic gait and had good ambulatory function.  (Tr. 24).

The ALJ cited all of the medical evidence plaintiff cites to support plaintiff's claim that her cervical injury is a severe impairment.  The ALJ explained that plaintiff had two surgeries to repair these issues and that the treatment notes from plaintiff's treating physician indicates that plaintiff was doing well after the surgeries.  Furthermore, the ALJ allowed for a sit/stand option in the residual functional capacity finding due to back pain.  Plaintiff's request for review must be denied as to this claim.

3.    *Post Traumatic Stress Disorder and Anxiety*

Plaintiff argues that the ALJ erred in not finding plaintiff's post traumatic stress disorder and anxiety were severe impairments.  The plaintiff does recognize that the ALJ found plaintiff had a severe impairment of mood disorder but plaintiff argues that it is not clear if that was meant to include plaintiff's post traumatic stress disorder and anxiety.  Further, plaintiff argues that the ALJ failed to assess any limitations for plaintiff's mood disorders in the ALJ's residual functional capacity finding.

The ALJ adequately discussed plaintiff's mental impairments.  The ALJ explained that plaintiff was diagnosed with depression, anxiety and post traumatic stress syndrome during

16

her recovery period. (Tr. 721-724; Tr. 717-718; and Tr. 651-652).  On March 26, 2007, Dr. Todd,

changed plaintiff from Ativan to Klonopin for anxiety and told plaintiff to follow up in three

months.  (Tr. 200).  Plaintiff had no formal psychiatric treatment until June 1, 2009, when she

was seen at Life Guidance, LLC.  (Tr. 716- 724).  On June 19, 2009, a psychiatric evaluation

gave plaintiff a diagnosis of major depressive disorder with a GAF of 55.  (Tr. 724).  On

September 24, 2009, Dr. Sung Park, M.D. completed a psycho-social summary that indicated that

plaintiff complained of depression and anxiety.  (Tr. 716).  Plaintiff reported that her hobbies

included taking care of her four children and volunteering at their school.  (Tr. 716).  It was noted

that plaintiff was neatly dressed and well-groomed.  Plaintiff's attention and concentration were

both normal and plaintiff was oriented to person, place and time.  (Tr. 717).  Plaintiff denied

auditory or visual hallucinations as well as suicidal or homicidal ideation.  (Tr. 717).  Plaintiff

was given a diagnosis of post-traumatic stress disorder and a GAF score of 65.  (Tr. 717).

The ALJ found that plaintiff had a severe impairment of mood disorder.  Based on

the above mentioned records that the ALJ cited, it can not be said that the ALJ did not consider

plaintiff's anxiety and post traumatic stress disorder in determining plaintiff severe impairment

of mood disorder.  Furthermore, the ALJ accommodated that severe impairment in the residual

functional capacity finding by stating that plaintiff is restricted from work involving detailed

instructions.  This court can not find that the ALJ lacked substantial support in finding plaintiff

had a severe impairment of mood disorder.  As such, plaintiff's request for review must be

dismissed as to this claim.

4.     *Left Arm and Right Hand/Arm Injuries*

Plaintiff argues that the ALJ did not adequately find plaintiff's left arm and right

17

hand/arm injuries to be severe impairments.  Plaintiff argues that she had sixteen screws in her right arm and had left hand injuries.

The ALJ found that plaintiff had severe impairments of history of traumatic fracture of right humerus, laceration of right upper extremity extensor tendons.  This court does not see how the ALJ failed to find plaintiff's right hand/arm injuries severe impairments as plaintiff argues.  The ALJ did find plaintiff's right hand/arm injuries were severe impairments. Furthermore, there are no medical records to support plaintiff's claim that she had a left hand injury that should amount to a finding of a severe impairment.  Plaintiff's request for review should be denied as to this claim.

B.        Claim: The ALJ's Residual Functional Capacity Finding Lacked Substantial Support

Plaintiff argues that the ALJ's residual functional capacity finding was not supported by substantial evidence.  Plaintiff argues that "[t]he decision clearly indicates that the ALJ determined Ms. Trout's residual functional capacity (RFC) only for the date of the hearing, which was a full 33 months after the auto accident that caused the illness/injuries."  (Plaintiff's brief, 12).  Plaintiff argues that the ALJ should have assessed plaintiff's RFC for periodic times throughout the relevant claim period.  Plaintiff cites a litany of medical records to support her argument that plaintiff can not perform light work and that the ALJ's RFC finding was not supported by substantial evidence.  Plaintiff argues that plaintiff's residual functional capacity for work is not fully addressed by assessing it only at the time of the hearing, but rather, in this case of a catastrophic accident, would have been better assessed periodically throughout the period.

The role of this court, on judicial review, is to determine whether the

Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988).  "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65.  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, 402 U.S. 401 (1971); Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).  "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

Plaintiff makes the argument that the ALJ should have been periodically assessing plaintiff's residual functional capacity and since the ALJ failed to do so then the residual functional capacity finding lacks substantial evidence.  Plaintiff fails to provide this court with any legal authority for this argument that the ALJ should have been periodically assessing plaintiff's residual functional capacity.  Furthermore, the ALJ clearly analyzed all of the medical records from the date of the auto accident to the date of the hearing.  As explained above, the ALJ cited and discussed all of the medical records.  The ALJ further discussed plaintiff's testimony.  The ALJ made a residual functional capacity finding and stated "[w]hile the claimant has established some significant limitations since her alleged onset date, there is no showing of wholly work preclusive limitations that meet  .  The evidence of record shows that claimant has improved with the prescribed treatment modalities which have included multiple surgical procedures.  Nonetheless, even in allowing for appropriate periods of recuperation, claimant has

19

been able to maintain her role as the primary caretaker of her four school aged children.

Claimant's demonstrated activities are simply not consistent with a finding of disability."[7]  (Tr.

27).  The ALJ's finding makes it clear to this court that the ALJ considered plaintiff's injuries at

all relevant times since the accident in making the residual functional capacity finding.  The ALJ

adequately cited all of the relevant records and supported his residual functional capacity finding.

As such, we must dismiss plaintiff's request for review as to this claim.

C.        Claim: The ALJ Improperly Rejected Medical Opinions

Plaintiff claims that the ALJ erred in not giving controlling or significant weight

to the opinions of Dr. Gregory Todd, plaintiff's treating physician, Dr. Sung Park, plaintiff's

mental health specialist, and Dr. Sam Weng, from the bureau of disability determination.

Plaintiff argues that these three opinions deserved controlling weight.  Plaintiff argues that the

ALJ erred in finding that their opinions were not support by their own treatment records or the

other evidence of record.  Plaintiff claims that the treatment records do support these opinions,

however, plaintiff fails to cite any actual treatment records for support of this assertion.

Generally, enhanced weight should be given to the findings and opinions of

treating physicians.  20 C.F.R. § 404.1527(d)(2);  Mason v. Shalala, 994 F.2d 1058, 1067 (3d

Cir. 1993);  Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).  These physicians' reports

should be accorded great weight, especially when their opinions "reflect expert judgment over a

prolonged period of time."  Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987), (quoting

_____

[7]This court assumes that "the statutory duration requirements" that the ALJ mentions is
the requirement that a plaintiff must demonstrate that there is some "medically determinable
basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a
statutory twelve-month period."  Stunkard v. Secretary of Health and Human Services, 841 F.2d
57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §
423(d)(1) (1982).

Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984)).  Controlling weight may be given to

the opinion of a treating source; however, the ALJ is not bound by a physician's statement of

disability and may reject it if:  (1) there is a lack of data supporting it, Newhouse v. Heckler, 753

F.2d at 286 (finding ALJ justified in rejecting treating physician's unsupported medical

conclusions); or (2) there is contrary medical evidence,  Frankenfield, 861 F.2d at 408 (holding

treating physician's opinion may be given no weight by ALJ if opinion is contrary to substantial

medical evidence).  The weight given to a physician's opinion depends upon the extent to which

it is supported by clinically acceptable medical data and laboratory medical techniques.  Coria v.

Heckler, 750 F.2d 245, 247 (3d Cir. 1984).

      If the treating physician's opinion conflicts with other medical evidence, then the

ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ

explains her reasons and makes a clear record.  *See* Jones, 954 F.2d at 129.  An ALJ need not

defer to a treating physician's opinion about the ultimate issue of disability because that

determination is an administrative finding reserved to the Commissioner.  *See* 20 C.F.R.

§404.1527(e).

      1.    *Dr. Gregory Todd*

      Dr. Todd indicated that plaintiff was limited to lifting/carrying 10 pounds, able to

stand/walk at least two hours in an 8 hour workday but only able to stand/sit for 10 minutes at a

time.  Dr. Todd noted that plaintiff was limited in the use of her upper extremities for

pushing/pulling activities.  Dr. Todd also found that plaintiff could only occasionally climb,

balance, kneel and crouch and plaintiff was precluded from crawling.  Reaching in all directions

and handling were reported as limited and environmental restrictions included temperature

extremes, noises, dust, vibration, humidity/wetness and fumes, odors, chemicals and gases.  The

ALJ  found that minimal weight was given to Dr. Todd's assessment because it was not

supported by Dr. Todd's own treatment notes or the other evidence of record.  (Tr. 28).

Dr. Todd's progress notes consistently indicate headaches, but as explained above,

plaintiff had an MRI and the results were unremarkable.  Dr. Todd's progress notes did show

consistent complaints of neck and back pain but there were no recommendations of restricted

activities.  Further, on the day Dr. Todd completed the medical source statement summarized

above, Dr. Todd also filled out a progress note.  That progress note indicated that plaintiff only

had slight decreased range of motion secondary to pain and full range of motion in the arms and

legs.  That progress note is not consistent with the recommendation in the medical source

statement of Dr. Todd that plaintiff was limited in the use of her upper extremities for

pushing/pulling activities and that plaintiff could only occasionally climb, balance, kneel and

crouch and plaintiff was precluded from crawling.  The ALJ found that Dr. Todd's medical

source statement was not supported by Dr. Todd's own treatment notes.  This court concludes

that the ALJ's decision in the present case as to Dr. Todd is supported by substantial evidence.

2.    *Dr. Sung Park*

On September 24, 2009, Dr. Sung Park, M.D. completed a psycho-social

summary that indicated that plaintiff complained of depression and anxiety.  (Tr. 716).  Plaintiff

reported that her hobbies included taking care of plaintiff's four children and volunteering at

their school.  (Tr. 716).  It was noted that plaintiff was neatly dressed and well-groomed.

Plaintiff's attention and concentration were both normal and plaintiff was oriented to person,

place and time.  (Tr. 717).  Plaintiff denied auditory or visual hallucinations as well as suicidal or

homicidal ideation.  (Tr. 717).  Plaintiff was given a diagnosis of post-traumatic stress disorder

and a GAF score of 65.  (Tr. 717).

On October 1, 2009, Dr. Park completed a medical source statement.  (Tr. 651-

652).  Dr. Park found that plaintiff had poor abilities in performing activities with a schedule and

maintaining regular attendance, in completing a normal workday or workweek and performing at

a consistent pace and traveling in unfamiliar places or using public transportation.  (Tr.  651).

Dr. Park also reported plaintiff with no more than a fair ability in the following areas: carrying

out short, simple instructions; understanding and remembering detailed instructions; carrying out

detailed instructions; maintaining attention and concentration for extended periods; working with

or near others without being distracted by them; making simple work related decisions;

interacting appropriately with the public; accepting instructions and responding appropriately to

criticism from supervisors; and responding appropriately to changes in the work setting.  (Tr.

652).

The ALJ found that no significant weight was given to Dr. Park's assessment as it

was not supported by the treatment notes from Life Guidance.  Additionally, the ALJ explained

that some of the limitations noted are more restrictive than plaintiff asserted.  The ALJ gave an

example where Dr. Park reported that plaintiff had no more than a fair ability to interact with the

public and accept instructions and respond appropriately to criticism from supervisors, however,

plaintiff indicated having no difficulty with family, friends and neighbors and getting along with

authority figures.  The court notes that Dr. Park indicated in his psycho-social summary that

plaintiff's attention and concentration were both normal and plaintiff was oriented to person,

place and time.  However, Dr. Park found in the medical source statement that plaintiff had no

23

more than a fair ability in the following areas: carrying out short, simple instructions;

understanding and remembering detailed instructions; carrying out detailed instructions;

maintaining attention and concentration for extended periods.  This court concludes that the

ALJ's decision in the present case as to Dr. Park is supported by substantial evidence because Dr.

Park's own psycho-social summary is in conflict with Dr. Park's medical source statement.

       3.     *Dr. Sam Weng*

On June 11, 2008, Dr. Sam Weng, M.D., with the bureau of disability

determination, performed a constructive evaluation of plaintiff. (Tr. 553-568). Plaintiff

complained of pain in her neck, back and spine, as well as headaches and difficulty sleeping.

(Tr. 553-568).   Plaintiff also informed Dr. Weng that she had run out of money and was no

longer taking pain medication regularly. (Tr. 553-568).  Plaintiff told Dr. Weng that she could

not sit or stand for long periods due to the pain in her back and neck. (Tr. 554).  Dr. Weng noted

plaintiff could walk short distances, and get on and off of the examination table on her own but

slowly and gingerly.  (Tr. 558).  Plaintiff also showed a decreased range of motion in her neck

due to the initial injury and the cervical surgery.  (Tr. 558).  Plaintiff had difficulty reaching,

pushing, balancing, and with right hand strength. (Tr. 553-568).  Dr. Weng noted that plaintiff

was unable to lift/carry more than five (5) pounds and unable to stand for more than one hour and

was limited to sitting only about one-half hour because of low back pain.  (Tr. 562).  Dr. Weng

also noted that plaintiff has problems with handling, fingering and feeling with the right hand but

no difficulty reaching.  (Tr. 563).

       The ALJ found that no significant weight was given to Dr. Weng's opinion

because it was based on a one-time examination with obvious emphasis placed on claimant's

subjective complaints and was not supported by the evidence of record.  (Tr. 28).  The Commissioner argues that the ALJ's decision not to give controlling weight to Dr. Weng's opinion because it was based on plaintiff's subjective complaints was accurate.  The Commissioner points out that Dr. Weng's report is clearly based on plaintiff's subjective complaints because Dr. Weng finds that lifting and carrying are pretty much limited because "as she claimed" she cannot lift or carry more than five pounds, she cannot stand for more than half an hour, and she can sit only half an hour as well.  (Tr. 559).  Dr. Weng also found balancing was impossible because "she claimed she [could] not go very slowly."  (Tr. 559).  This court concludes that the ALJ's decision to give no significant weight to Dr. Weng's opinion is accurate and supported by the record.

D.        Claim: The ALJ's Determination that Plaintiff's Testimony Was Not Credible

        Plaintiff claims that the ALJ's decision finding the plaintiff's testimony concerning the intensity, persistence and limiting effects of plaintiff's symptoms was not credible was not supported by substantial evidence.  Plaintiff claims that the ALJ found plaintiff's testimony was not credible purely based on the fact that plaintiff cared for her four school aged children.

        An ALJ is empowered to evaluate a claimant's credibility.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  Even if an ALJ concludes that a medical impairment exists which could reasonably cause the symptoms alleged, he must evaluate the intensity and persistence of the symptoms, and the extent to which they affect the claimant's ability to work.  20 CFR § 404.1529(b) and (c).  In doing so, the ALJ may consider the internal consistency of the claimant's own statements, the medical evidence, the claimant's medical

treatment history, and findings by state agency or other program physicians.  20 C.F.R. § 1529.

Plaintiff argues that the ALJ failed to point to any medical evidence that was inconsistent with plaintiff's testimony about her symptoms and that the ALJ dismissed plaintiff's testimony because she cares for her children.

The ALJ gave the following detailed summary of plaintiff's testimony:

The claimant testified she is 32 years of age, married and has four children whose ages range from 14 to 5.  Claimant testified she last worked on February 22, 2007.  She was involved in a car accident and suffered multiple injuries to her right arm, tail bone, neck and back.  She reported receiving a $10,000 settlement.  Claimant testified that she has a hard time moving her arms and suffers with migraine headaches four to five times a week.  The claimant reported having limited mobility in her back, arms, and legs.  She has difficulty showering and washing her hair and tying her sho[r]es.  She reported being unable to lift and hold items.  She later reported that the MRI of the brain was unremarkable and she could not see a neurologist secondary to insurance problems.  Claimant stated that after her car accident her insurance at work lapsed and she was then on her husband's plan until he was laid off and for one and one-half years she was without medical insurance.  The claimant testified that she cannot see her orthopedic specialist because she does not have the money to pay up front and she cannot have surgery because she has no insurance.  Claimant further testified that she was involved in a second car accident which made everything a lot worse, in particular her headaches and depression.  Claimant stated that she can sit for about 15 minutes and stand for 5 minutes.  She also reported that her legs get numb and cause her to fall.  Her hands cramp up and her right thumb is completely numb.  She reported that she spends time at home on the couch and she is best lying down.  Claimant's pain at times is overwhelming and she gets nauseous.  Claimant's medications help only sometimes.  Her current medications include Prozac, Buspar and Trazodone.  Topamax is too expensive for her.  Claimant's mother helps claimant's children in transporting them to their sports activities.  Usually claimant takes her shower when someone is at her home because she is afraid her legs would go numb and she would fall.  Claimant's treatment thus far has included surgeries on her neck, elbow and hands.  After discharge from hospital claimant had visiting nurses come to her home and she was bedridden except for bathroom breaks.  She was in a hospital bed for about six weeks after her accident and she was to follow up with pain management but lost her insurance.  With regard to her mental status, claimant reported getting treatment at Life Guidance.  She reported having a lack of motivation and/or

desire to do anything and gets two to four panic attacks a month.  She is
uncertain as to what triggers these attacks but later reported if might be if her
children are screaming, lack of control in her environment or stress from facing
a busy day or some activity for the children that she must attend.
(Tr. 26-27).

After giving the above detailed summary of plaintiff's testimony the ALJ finds

plaintiff not credible.  The ALJ simply states that "[t]he evidence of record shows that claimant

has improved with prescribed treatment modalities which have included multiple surgical

procedures.  Nonetheless, even in allowing for appropriate periods of recuperation, claimant has

been able to maintain her role as the primary caretaker of her four school aged children."  (Tr.

27).

The ALJ points to no specific medical records that contradict plaintiff's

testimony.  The ALJ fails to point to any inconsistencies in plaintiff's testimony that show

plaintiff's testimony is not credible.  The ALJ did not adequately explain why he was discounting

plaintiff's testimony.

We find the ALJ's decision as to this issue is not supported by substantial

evidence.  As such, we must recommend that plaintiff's request for review be granted as to this

claim and that this issue be remanded to the ALJ for further consideration.

E.        Claim: The ALJ's Hypothetical Question

At the fifth and final step of the above mentioned analysis, plaintiff challenges the

sufficiency of the ALJ's hypothetical to the vocational expert ("VE").   Plaintiff argues that the

hypothetical question posed to the VE was deficient because it did not convey all of plaintiff's

impairments.  Specifically, plaintiff contends the hypothetical should have included moderate

degree of limitation in maintaining concentration, persistence or pace.  Furthermore, plaintiff

contends that the hypothetical should have included limitations for plaintiff's history of traumatic fracture of right humerus, laceration of right upper extremity extensor tendons.  Finally, plaintiff argues had the ALJ included the limitations listed by Dr. Park in the hypothetical, plaintiff would have been precluded from all work.

In order for a vocational expert's answer to a hypothetical question to be considered substantial evidence, the question must reflect all of a claimant's impairments that are supported by the record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question portrays the claimant's individual physical and mental impairments.  Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).  However, in eliciting testimony from a VE, the ALJ's hypothetical need not contain every impairment alleged by the claimant, but must only convey all of the claimant's credibly established limitations. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).  Where the record contains medically undisputed evidence of a specific impairment not included in the hypothetical, the expert's response is not considered substantial evidence.  Podedworny, 745 F.2d at 218.

In the case at bar, the ALJ expressly found in the opinion issued after the hearing that the evidence indicated that plaintiff had moderate difficulties in maintaining concentration, persistence or pace.  (Tr. 25).  However, the ALJ omitted this limitation in the hypothetical.  The only mental limitation mentioned in the hypothetical was unskilled work.  In Ramirez v. Barnhart, 372 F.3d 546 (3d Cir.2004), the Third Circuit expressly held that a hypothetical question limiting a claimant to simple, repetitive, one to two step tasks is not sufficient to

28

encompass a claimant's impairments where the ALJ has found that he or she "often" suffered from deficiencies in concentration, persistence and pace.  Id. At 554.  The Third Circuit reasoned that "many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." Id.  Other courts within the Third Circuit have similarly refused to uphold an ALJ's ruling where a claimant either "often" had deficiencies or had "moderate" deficiencies in concentration, persistence or pace, and where the ALJ only limited the claimant to non-detailed, simple and routine and/or low stress work.  *See*, e.g., Deitz v. Astrue, Civ. A. No. 06-5053, 2008 WL 577000, at *11 (D.N.J. Feb. 29, 2008) (finding error warranting remand in ALJ's hypothetical that limited claimant to low stress jobs but failed to include moderate limitations in concentration; Barry v. Astrue, Civ. A. No. 05-1825, 2007 WL 2022085, at *4 (E.D.Pa. July 9, 2007) (finding that hypothetical restriction to simple, low stress, one-to-two step tasks, involving limited contact with the public and co-workers did not adequately encompass credibly established moderate limitations in concentration, persistence and pace.)

As noted above, the ALJ found in the opinion issued after the hearing that the evidence showed that plaintiff had moderate difficulties in maintaining concentration, persistence or pace.  (Tr. 25).  Yet, when formulating the hypothetical to the vocational expert, the ALJ only limited plaintiff to unskilled work.  (Tr. 640).  The ALJ did not include a moderate limitation in maintaining concentration, persistence or pace.  Such a hypothetical does not sufficiently incorporate plaintiff's medically established limitations.  Accordingly, the VE's answer cannot serve as substantial evidence.

Plaintiff further argues that the ALJ failed to include limitations for plaintiff's

29

history of traumatic fracture of right humerus, laceration of right upper extremity extensor

tendons.  However, plaintiff's counsel did ask the VE if there were jobs plaintiff could do if the

VE included the limitations due to plaintiff's hand limitations.  The VE testified that plaintiff

could perform the jobs of a information clerk and storage rental clerk.  The ALJ found that

plaintiff could perform those two jobs.  Plaintiff's hand limitations were considered by the VE.

The VE testimony was supported by substantial evidence as to this issue.

      Finally, plaintiff claims that the limitations found by Dr. Park should have been

included in the hypothetical to the VE.  However, as discussed above, the ALJ provided

substantial evidence to support not giving Dr. Park's opinion controlling weight.  Thus, the ALJ

was not required to include the limitations found by Dr. Park.

      We find that the matter should be remanded as the hypothetical question posed to

the VE was deficient because it did not include moderate degree of limitation in maintaining

concentration, persistence or pace.

F.      <u>Claim: The ALJ's Decision Should be Reversed</u>

      Finally, plaintiff claims that the medical source opinions of Dr. Todd, Dr. Park,

and Dr. Weng all show that plaintiff is precluded from all work.  Plaintiff argues that this court

should reverse the ALJ's opinion and find plaintiff disabled based on those three medical source

opinions.  As explained above the ALJ provided substantial evidence for not giving controlling

weight to the opinions of Dr. Todd, Dr. Park and Dr. Weng.  As such, plaintiff's request for

review should be denied as to this claim.

VI.      CONCLUSION

      We do find that the matter should be remanded as to the issue of the ALJ not

providing substantial evidence when not finding plaintiff's migraines to be a severe impairment, when finding plaintiff not wholly credible, and, because the hypothetical question posed to the VE was deficient in that it did not include moderate degree of limitation in maintaining concentration, persistence or pace.

Therefore, this court makes the following:

<u>RECOMMENDATION</u>

AND NOW, this _____ day of July, 2011, it is

RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be GRANTED in part and DENIED in part.


BY THE COURT:



                                                    /S LINDA K. CARACAPPA
_____
                                                    LINDA K. CARACAPPA
                                                    UNITED STATES MAGISTRATE JUDGE